Appellant, Lucy Cart Clifte, appeals a decision by the Brown County Court of Common Pleas, Juvenile Division, terminating her parental rights to her children, Elizabeth Clifte (DOB: 1/24/96), Nicole Cart (DOB: 11/3/93), and Allura Mayeur (DOB: 3/30/91), and granting Brown County Department of Human Services ("BCDHS") permanent custody of the children. We affirm.
BCDHS had been involved with the children for several years. The children had been in foster care initially in 1996, but were returned to appellant under protective supervision in February 1997. BCDHS provided intensive case management services to the home due to appellant's diagnosed bipolar mental illness. In April of 1997 agency workers became concerned that appellant's homemaking skills were declining and that appellant was indicating that she no longer wanted to receive counseling or take her medication. On April 24, 1997, the agency received a complaint that appellant was holding a butcher knife and threatening to kill the Chief of Police of Aberdeen. The complainant also indicated that conditions in the home were deplorable. Appellant's husband (who is apparently not the father of any of the children) had been jailed on bad check charges.
When caseworkers and a deputy arrived at appellant's home, appellant was agitated and screaming profanities. She also threatened to hurt the caseworkers. Appellant initially refused to let the workers check on the children, but later allowed them to enter the residence. Appellant was hospitalized following this incident. She admitted that she had not been taking her medication. The children were placed in foster homes following an emergency hearing. A motion to suppress evidence, derived from the April 24 incident, was denied by the trial court on July 28, 1997.
Appellant and her husband left Ohio for Louisiana on or about September 30, 1997. They then moved to Texas in October. A shelter care and dispositional hearing was held on November 6, 1997. This hearing had been continued initially because appellant was hospitalized, and later due to the moving and the pendency of the motion to suppress. The children were adjudicated neglected and dependent. BCDHS moved for permanent custody.
The trial court held an adjudicatory hearing on the permanent custody motion on February 5, 1998. The court concluded that the children should not be placed with appellant and could not be placed with her within a reasonable length of time. The court also concluded that it was in the best interest of the children that they be committed to the permanent custody of BCDHS. The court therefore terminated appellant's parental rights.[1] Appellant appeals this decision, presenting a single assignment of error:
 THE TRIAL COURT ERRED IN AWARDING THE BROWN COUNTY DEPARTMENT OF HUMAN SERVICES THE PERMANENT CUSTODY OF [APPELLANT'S] THREE CHILDREN WITHOUT REQUIRING THEM TO PRODUCE CLEAR AND CONVINCING EVIDENCE THAT SAID PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILDREN.
We begin with the premise that natural parents have a fundamental liberty interest in the care, custody, and management of their children. See Santosky v. Kramer (1982),455 U.S. 745, 769, 102 S.Ct. 1388. However, this interest is not absolute. R.C. 2151.353(A)(4) provides that if a child is adjudicated a dependent child, the court may commit the child to the permanent custody of public children services agency if the court determines (1) in accordance with R.C. 2151.414(E), that the child cannot be placed with one of his parents within a reasonable time or should not be placed with either parent, and (2) in accordance with R.C. 2151.414(D), that permanent custody is in the best interest of the child.
"Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." Santosky v. Kramer (1982), 455 U.S. 745,769, 102 S.Ct. 1388, 1391. Furthermore, R.C. 2151.414(B) permits a court to award permanent custody to the agency if the court determines by clear and convincing evidence that an award of permanent custody is in the child's best interest, and that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. Inre Egbert Children (1994), 99 Ohio App.3d 492. An appellate court will not reverse a trial court's determination pursuant to R.C. 2151.414(B) if the trial court's judgment is supported by sufficient credible evidence going to all the essential elements of the case. In re Boylan (Jan. 26, 1998), Butler App. No. CA97-04-088, unreported, at 8-9.
Appellant argues that the court misstated some facts and that there was insufficient evidence of noncompliance with the case plan, as the plan had only been filed on November 5, 1997. The General Assembly has provided "exacting guidelines" for determining whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with such parent. In re Robinson (Feb. 9, 1998), Butler App. No. CA97-01-023, unreported, at 3. When making the determination, the court shall determine that one or more of the twelve factors outlined in R.C. 2151.414(E)(1) — (12) exist as to each of the child's parents. In re William S. (1996),75 Ohio St.3d 95, syllabus; Boylan, Butler App. No. CA97-04-088, at 9. As relevant to this case, R.C. 2151.414-(E)(2) provides that the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent if:
 Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
The record shows that the children were removed from appellant's care because she had stopped taking her medication and the children were neglected and in danger. The applicable case plan required that appellant maintain adequate and safe housing, continue individual counseling, take all medication as prescribed, and improve parenting skills. To enable BCDHS to monitor her compliance, appellant needed to sign releases. At the hearing, appellant acknowledged that she had never signed any such releases. Appellant provided nothing other than her own testimony to indicate that she had been receiving the required counseling or that she had been taking her medication.
Appellant acknowledged that she was angry and agitated when she was visited for a home study by a Texas children's protective services specialist. Appellant indicated that her relationship with her husband was violent during that home study, which took place only a week before the hearing. At the hearing, appellant also acknowledged that at that time there were fights and she "could not control [her] anger." Appellant admitted that she was not receiving individual counseling, although she alleged that she had attended group counseling and saw a doctor approximately once each month. Appellant expressed hostility to individual counseling and to homemaker services and parenting skills classes. Appellant also indicated that transportation problems impeded her compliance with the case plan.
Appellant's husband, Terrance Clifte, confirmed that appellant was agitated and angry during the home study, and that appellant has problems with authority figures. He denied recent violence in the relationship, but acknowledged past incidents and stated that appellant becomes violent if she does not take her medication. He stated that he attempts to monitor her medication.
Jeana Bailey, a BCDHS caseworker, testified that appellant had not completed the case plan and that appellant had refused to sign releases. Bailey stated that she then informed appellant that she needed to sign releases for her attorney. Bailey testified that she had never received any releases from appellant despite asking for them at least three times for the purpose of receiving information from a counselor and a doctor. She stated that appellant had missed four out of eight visits with her children before leaving Ohio, and that she had missed three out of nine scheduled telephone contacts since that time. Ms. Bailey also testified that the children were doing well in their foster homes and appear to have stabilized. Allura, the eldest child, was receiving counseling and had been moved to a therapeutic foster home. Ms. Bailey testified that the children needed the stability which could be achieved by placement in an adoptive home.
The trial court found that appellant's "failure to attend counseling, complete parenting classes, cooperate with Parents-as-Teachers, and be receptive to homemaker services" had resulted in the children's removal, and that her continued noncompliance with the case plan had resulted in the recommendation of the Texas home study that the children not be returned to appellant unless she received significant additional services in individual and group counseling, group and individual therapy and anger control management. The trial court found that BCDHS had made reasonable efforts to prevent the need for the children to live outside appellant's home and that the children could not be placed with any parent within a reasonable time. The trial court further found that the failure to obtain any proof that "psychiatric services are being attended and that medication is prescribed and taken is the single most alarming failure of case plan requirements." The court therefore concluded that the children should not be placed with appellant and that it was in their best interest that they be committed to the permanent custody of the BCDHS.
After reviewing the record, we find competent credible evidence supporting these findings by the trial court. We find that, pursuant to R.C. 2151.414(E)(1), clear and convincing evidence supports the finding that appellant failed to follow the case plan, and did not "substantially remedy the conditions causing the children to be placed outside the home." We further find that clear and convincing evidence supports the trial court's finding that it was in the best interest of the children to have permanent custody granted to BCDHS. In determining the best interest of a child, the court shall consider all relevant factors, including, but not limited to, the factors listed in R.C. 2151.414(D)(1-4). In re Smallwood
(Jan. 26, 1998), Butler App. No. CA97-02-041, unreported. These factors are:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
Appellant had missed half of her visitations even before leaving Ohio. Allura's counselor further indicated that visitation was not recommended as it caused confusion, stress and regressive behaviors. The children's guardian ad litem
stated that the children were doing well in their present environment and that he did not foresee that appellant's living conditions would change sufficiently in the foreseeable future. Therefore, he recommended that the motion for permanent custody be granted. Appellant argues that the case plan had only been in place for a few months at the time of the dispositional hearing; however, its provisions were clear and appellant's noncompliance was substantial.[2] The evidence shows that appellant was not able to provide a legally secure permanent placement for her children.
We find pursuant to R.C. 2151.414(D) that clear and convincing evidence supports the trial court's conclusion that it was in the best interest of these children to award permanent custody to BCDHS. Accordingly, appellant's sole assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.
[1] The court also terminated the parental rights of "any John Doe father of any of the three children (including appellant's husband, Terrance Clifte).
[2] The trial court's alleged error in stating when the children were initially placed in foster care was irrelevant to its findings on appellant's compliance with the plan and the children's current circumstances.